IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| RACHEL EILEEN LUZADER, | ) | Case No. 5:25-cv-02247-SO |
| | ) | |
| Plaintiff, | ) | JUDGE SOLOMON OLIVER, JR. |
| | ) | |
| v. | ) | MAGISTRATE JUDGE |
| | ) | REUBEN J. SHEPERD |
| COMMISSIONER OF | ) | |
| SOCIAL SECURITY, | ) | |
| | ) | **REPORT AND RECOMMENDATION** |
| Defendant. | ) | |

## I.      Introduction

Plaintiff, Rachel Eileen Luzader ("Luzader"), seeks judicial review of the final decision of the Commissioner of Social Security, denying her applications for disability insurance benefits ("DIB") and supplemental security income ("SSI") under Titles II and XVI of the Social Security Act. This matter is before me pursuant to 42 U.S.C. §§ 405(g), 1383(c)(3), and Local Rule 72.2(b). Because the Administrative Law Judge ("ALJ") applied proper legal standards and reached a decision supported by substantial evidence, I recommend that the Commissioner's final decision denying Luzader's applications for DIB and SSI be affirmed.

## II.     Procedural History

Luzader filed for DIB and SSI on January 4, 2024, alleging a disability onset date of May 2, 2023. (Tr. 69, 79). The claims were denied initially and on reconsideration. (Tr. 114, 123, 127). She then requested a hearing before an ALJ. (Tr. 128-29). Luzader (represented by counsel) and a vocational expert ("VE") testified before the ALJ on December 5, 2024. (Tr. 38).

On December 27, 2024, the ALJ issued a written decision finding Luzader not disabled. (Tr. 16-32). The Appeals Council denied her request for review on August 22, 2025, making the hearing decision the final decision of the Commissioner. (Tr. 1-3; see 20 C.F.R. §§ 404.955, 404.981). Luzader timely filed this action on October 20, 2025. (ECF Doc. 1).

### III.    Evidence

#### A.    Personal, Educational, and Vocational Evidence

Luzader was 38 years old on the alleged onset date, making her a younger individual according to Agency regulations. (*See* Tr. 30). She graduated from high school. (*See id.*). In the past, she worked as a Cashier, Checker DOT# 211.462-014, classified as and actually performed at the light exertional level, SVP 3; Cashier II, DOT# 211.462-010, classified as and actually performed at the light exertional level, SVP 2; and Cleaner, Housekeeping, DOT# 323.687-014, classified as and actually performed at the light exertional level, SVP 2. (*Id.*).

#### B.    Relevant Medical Evidence

On June 17, 2022, Luzader attended an annual wellness examination with Heather Johnson, CNP, at Stark County Physicians. (Tr. 437). Luzader presented with a history of depression, anxiety, and PTSD. (*Id.*). Luzader stated that she was well and had no problems or concerns. (*Id.*). On examination, NP Johnson noted normal mood and affect, and normal orientation. (Tr. 438). NP Johnson recommended that Luzader follow up with Phoenix Rising for counseling and continued Luzader on alprazolam 0.5 mg, taken twice daily as needed. (Tr. 439).

On July 26, 2022, Luzader followed up with Phoenix Rising for counseling. (Tr. 578). Luzader received counseling from July 26, 2022, through February 19, 2024. (Tr. 452-54). At the July 26, 2022, session with Karen Marchand, LPCC, Luzader reported that she was stressed, and her anxiety and depression had worsened recently. (Tr. 579). Luzader also reported that her

anxiety can be as bad as a ten out of ten severity, with coping skills reducing that number to a five out of ten. (Tr. 575).  Ms. Marchand continued Luzader's diagnosis of generalized anxiety disorder and major depression. (*Id.*). At the next two sessions, on August 19, 2022, and September 19, 2022, Ms. Marchand found that there was no significant change in Luzader's condition. (Tr. 570, 572).

On September 20, 2022, Luzader saw Judy Chava, M.S.N., P.M.H.N.P., for a psychiatric evaluation for medication management. (Tr. 561). At the evaluation, Luzader reported that her mood swings from high to low, her anxiety was the worst of her conditions, she felt depressed and hopeless, and had suicidal intent. (*Id.*). Luzader's anxiety was categorized as moderate and her depression was categorized as moderately severe. (Tr. 568). NP Chava prescribed lithium carbonate ER 300 mg, taken once a day, for mood stabilization and suicide prevention. (*Id.*).

On October 19, 2022, Luzader had a follow up appointment with NP Chava where Luzader's mental status was noted as unremarkable and NP Chava found Luzader had made some progress on her conditions. (Tr. 554). At the same appointment, NP Chava continued Luzader on lithium ER 300 mg daily. (Tr. 556).

At an October 25, 2022 office visit Ms. Marchand noted that Luzader reported feeling as if she had more symptoms and requested that her medication be adjusted. (Tr. 551-52). She reported working 37 hours over the weekend and was tired. (Tr. 552). Ms. Marchand noted no significant change on Luzader's condition. (Tr. 551).

In a November 7, 2022, visit with Ms. Marchand, Luzader reported having a lot of anxiety and racing thoughts and that she would like to talk to her medication prescriber for an increase in dosage. (Tr. 549). Ms. Marchand noted minimal progress and no significant change in her condition. (*Id.*).

On December 8, 2022, Luzader called NP Chava's office with symptom complaints; NP Chava increased her lithium dosage to 900 mg daily. (Tr. 539).

On January 11, 2023, Luzader saw NP Chava for medication management and reported that her moods have leveled out, but she was going through a lot of stress. (Tr. 539). NP Chava noted no progress in Luzader's condition and continued her on lithium 900 mg daily. (Tr. 540-41).

In an urgent care visit with Jon Elias, M.D., on February 14, 2023, Luzader presented with left shoulder pain. (Tr. 424). Luzader stated that she hurt her shoulder when she climbed the ledge of a dumpster to pull up the door where she began to fall and held onto the edge of the dumpster with her arm in an unsuccessful attempt to prevent the fall. (*Id.*). On examination, Luzader's range of motion was significantly impaired, with limited external and internal rotation. (*Id.*). Spurling's test was negative and the strength in the muscles of Luzader's arm were rated five out of five, but Dr. Elias could not fully ascertain the shoulder muscles due to the amount of pain. (*Id.*). X-ray revealed no acute osseous abnormality. (Tr. 426). Dr. Elias determined it was a soft tissue strain in the shoulder girdle and recommended resting with a sling, applying ice, and taking Tylenol and muscle relaxant as needed. (Tr. 424).

On March 21, 2023, Luzader followed up on her shoulder injury with Crystal Clinic Orthopedic Center. (Tr. 384). Luzader reported that her pain had only slightly improved with jolts of pain if she moves the wrong way or too quickly. (*Id.*). Luzader rated her pain a four out of ten, with a ten out of ten rating at its worst, and denied neck pain or radicular pain down her arm. (*Id.*). On examination, Kurtis Stemple, M.D., found no signs of swelling and no soft tissue atrophy or deformity, but found that pain was reproduced with range of motion of the left shoulder. (Tr. 386). Dr. Stemple recommended nonoperative treatment, placed Luzader on a

4

work restriction, and showed her exercises to help regain her flexibility. (Tr. 387). Dr. Stemple prescribed prednisone 10 mg, taken four times a day for seven days, followed by two times a day for seven days, and then one time a day, until no medication remains. (*Id.*).

At an April 3, 2023, counseling session Luzader reported worsening anxiety and depression to Ms. Marchand. (Tr. 533).

On April 26, 2023, Luzader returned to Crystal Clinic for continued care. (Tr. 378). Luzader reported that her pain is continuous, gradually getting worse, and exacerbated by reaching overhead or away from her body. (*Id.*). Luzader rated her pain as an eight out of ten. (*Id.*). Dr. Stemple found no sign of swelling or deformity of the shoulder on examination and ordered an MRI to determine whether there was a ligament tear. (Tr. 381). Dr. Stemple prescribed Luzader oxycodone 325 mg, one half a pill or one full pill taken twice a day as needed for pain. (*Id.*).

On May 12, 2023, Luzader underwent an MRI and, upon review, Jason Esterle, M.D., opined that the imaging showed moderate supraspinatus tendinopathy, but no high-grade partial or full-thickness tendon tear. (Tr. 376).

On May 25, 2023, Luzader returned to Crystal Clinic and reported the same symptoms as in the April 26 visit, but with further pain in her neck and collar bone. (Tr. 369). On examination, Dr. Stemple found no signs of swelling or deformity, and pain was reproduced when Luzader's shoulder was moved. (Tr. 371). Dr. Stemple treated Luzader with corticosteroid injections at the visit for therapeutic and diagnostic purposes. (Tr. 372).

Luzader received counseling from Ms. Marchand on June 5 and 19, 2023, where she noted no significant change in Luzader's condition (Tr. 520, 522).

5

On July 12, 2023, Luzader saw NP Chava for medication management. (Tr. 513-16). Luzader reported increased anxiety and mood swings. (Tr. 513). She reported losing her job at the gas station in May, stating her boss cited her mental health and had accused her of being aggressive and mean. (Tr. 513-14). NP Chava noted that the complexity of Luzader's condition had increased due to multiple antidepressant failures, history of multiple failed suicide attempts, and that she was on medication requiring close monitoring. (Tr. 516). NP Chava changed Luzader's diagnosis to bipolar disorder, current episode mixed, mild, due to history of diagnosis and treatment. (*Id.*). She continued Luzader on lithium 900 mg daily and added buspirone 5 mg, twice daily. (Tr. 516-17).

In an August 22, 2023, visit with NP Chava, Luzader reported continued depression and anxiety and difficulty in dealing with the death of her grandmother. (Tr. 494-500). At this evaluation, NP Chava continued Luzader on lithium 900 mg daily; increased buspirone to 10 mg twice a day; and prescribed Lamictal, 25 mg, twice a day, for her bipolar diagnosis. (Tr. 496).

Luzader was seen on September 7, 2023, September 26, 2023, October 5, 2023, and October 31, 2023, by Ms. Marchand and NP Chava where both physicians reported that Luzader had made "some" or "good" progress. (Tr. 473, 480, 484, 491). In a December 27, 2023, counseling session with Ms. Marchand, Luzader stated that she was going through a significant amount of grief due to the death of her fiancé and aunt. (Tr. 471).

On January 22, 2024, Luzader followed with NP Chava where she noted a significant downturn in Luzader's condition. (Tr. 461). NP Chava found that Luzader had a notable decrease in her mood, affect, behavior, and functioning, due to depression and increased stress. (*Id.*). As a result, NP Chava prescribed bupropion XL, 150 mg, for depression. (Tr. 463). In a February 19,

2024, psychiatric evaluation, NP Chava noted Luzader had made minimal progress in her condition and continued her medications as prescribed. (Tr. 455).

### C. Medical Opinion Evidence

#### 1. State Agency Reviewing Opinion Evidence

On April 8, 2024, at the initial level, state agency reviewing physician, Abraham Mikalov, M.D., opined that Luzader had exertional limitations of occasionally lifting or carrying 20 pounds, frequently lifting 10 pounds, and standing, walking, or sitting for no more than 6 hours in an 8-hour workday. (Tr. 73-74, 83-84). Dr. Mikalov opined that Luzader had the postural limitations of frequently climbing ladders, ropes, or scaffolds and frequently crawling. (Tr. 74, 84). On reconsideration, Ngozi Onuoha, M.D., opined that Dr. Mikalov's limitations were well supported and consistent with the examination and other findings, and affirmed. (Tr. 94, 104).

On March 22, 2024, at the initial level, state agency reviewing physician, Katherine Fernandez, Psy.D., opined that Luzader had limitations to her sustained concentration and persistence capacities, social interaction, and adaptation. (Tr. 75, 85). Regarding sustained concentration and persistence, Dr. Fernandez opined that "[Luzader] is able to maintain c/p/p to carry out complex tasks in a work setting which does not involve a fast-paced production demand." (*Id.*). Turning to social interaction, Dr. Fernandez opined that "[Luzader] is able to interact with coworkers, supervisors, and the public on a brief, superficial basis." (*Id.*). Finally, regarding adaptation, Dr. Fernandez opined that "[Luzader] is able to adapt to a work setting which does not involve a fast-paced production demand with infrequent changes in expectations." (*Id.*). On June 4, 2024, Jennifer Swain, Psy.D., found, on reconsideration, that Dr.

Fernandez's findings were well supported and consistent with the evidence, and affirmed. (Tr. 95, 105).

### 2. Consultative Examination Opinion Evidence

Luzader saw Paul Scheatzle, D.O., for a consultative examination on April 1, 2024. On examination, Dr. Scheatzle found that Luzader had a five out of five-strength rating in the muscles in her shoulder, had normal gait and ambulation, and normal dexterity. (Tr. 586-87). Luzader also had a negative straight leg raise test. (Tr. 590). Dr. Sheatzle noted that Luzader had no pain behaviors and could transfer on and off the examination table without difficulty. (Tr. 592). Additionally, Luzader had tenderness and a decreased range of motion in her left shoulder. (*Id.*). Based on his examination, Luzader's self-reported medical history, and a chart review, Dr. Scheatzel opined that Luzader had the physical limitations of unlimited sitting, with a change of position every 30 minutes, unlimited standing, with a change of position every 10 minutes, walking up to one city block, lifting at a medium physical demand level of 50 pounds, occasionally lifting up to chest height or up to 20 pounds overhead, and carrying 30 pounds. (*Id.*). Dr. Scheatlze also opined that Luzader had the mental limitations of impaired sustained concentration, persistence of social interaction, and adaptation. (Tr. 593).

### D. Administrative Hearing Evidence

Luzader testified before an ALJ on December 5, 2024. (Tr. 40). Luzader testified that she is 40 years old. (Tr. 43). Luzader stated that she has a driver's license and graduated high school. (Tr. 44-45). Luzader testified that she is currently working at Speedway as an assistant lead, where she works 22 to 40 hours a week. (Tr. 45-46). Her duties at Speedway include lifting no more than 15 pounds while restocking the store. (Tr. 46-47). Luzader testified that she previously worked at Bell Stores, another gas station, where she hurt her shoulder. (Tr. 46-47). Luzader

8

claimed she did not do any lifting at this job over a few pounds. (Tr. 47). She testified that she was terminated from Bell Stores due to her mental health. (Tr. 50). In addition, Luzader testified that she briefly worked at Chancy Food Mart Store as a cashier in 2023, and at Quality Comfort Living as a cleaner in 2020. (Tr. 49). At Quality Comfort Living, Luzader stated she collected trash, wiped off counters, ran the sweeper, and "tidied [the patients] up," but did not do any lifting. (Tr. 49). Luzader also testified that she worked at Nanicki Snack Box, a convenience store, as a cashier, where her job duties did not include lifting. (Tr. 49-50).

Luzader testified that she became disabled on May 2, 2023. (Tr. 51). She explained that she felt unable to work because of outbursts due to bipolar disorder. (*Id.*). Luzader stated that her bipolar disorder can make her a threat to others. (*Id.*). Specifically, Luzader tends to blackout, break things, and get aggressive. (Tr. 52). These spells occur once or twice a month and last ten to fifteen minutes. (*Id.*) Luzader also testified that she does not like to be around people, and being around others worsens her anxiety. (Tr. 51). At home, Luzader testified that she isolates herself in the bedroom so she does not have to see anyone. (Tr. 52). When asked about her treatment for her mental health, Luzader testified that she goes to therapy every three weeks and takes lithium, Buspar, and Wellbutrin. (Tr. 53). However, Luzader stated that she did not feel as though the medications were helping her. (Tr. 53, 56-57).

Next, Luzader's attorney questioned Luzader on her mental and physical conditions. (Tr. 54-60). Regarding her mental conditions, Luzader testified that her anxiety, depression, and PTSD impact her on a day-to-day basis because she does not want to leave her home, she does not want to interact with others, and she only wants to sleep. (Tr. 56). Luzader estimated that around 12 to 15 days in the month she is unable to complete tasks chores because she loses

9

interest, her mood drops and "turns dark," and she feels the need to go to sleep. (Tr. 58-59). She testified that she needs a two-hour rest period daily to function properly. (Tr. 59).

Regarding her physical conditions, Luzader testified that she feels she is unable to return to a 40-hour work week because her body hurts when she gets up and moves around. (Tr. 58). Luzader stated that she can only comfortably lift five pounds, and that lifting with her left arm or holding something to her left side causes pain. (Tr. 55). Luzader also stated that she has difficulty using her left hand without pain. (Tr. 55-56). When completing fine motor skills, her left hand cramps up occasionally. (Tr. 66). Luzader testified that she is left-handed. (*Id.*).

After Luzader's testimony concluded, VE Darren Wright testified before the ALJ. (Tr. 60-63). VE Wright classified Luzader's prior work as a Cashier-Checker, DOT# 211.462-014, SVP-3, semi-skilled work, light in exertion; Cleaner, Housekeeping DOT# 323.687-014, SVP-2, unskilled work, light in exertion; and Cashier II, DOT# 211.462-010, SVP-2, unskilled work, light in exertion. (Tr. 61).

The ALJ asked VE Wright, if a hypothetical individual of Luzader's age and education, could work the positions Luzader previously worked, if that individual were limited to light work; occasionally lifting and carrying 20 pounds and frequently 10 pounds; sitting, standing, and walking for up to six hours of the workday; pushing and pulling as much as she can lift and carry; frequently climbing ladders, ropes, or scaffolds; frequently crawling; performing simple, routine, and repetitive tasks but not at a production rate pace; occasional interaction with supervisors, co-worker, and the public; and tolerating occasional changes in a routine work setting. (Tr. 61-62). VE Wright testified that the Cleaner, Housekeeping position would be available to such an individual, but such an individual would not be able to work as a Cashier-Checker or Cashier II. (Tr. 62).

10

The ALJ then asked VE Wright what other work the individual in the first hypothetical could perform. (*Id.*). The VE testified that the individual could work as a Marker, DOT# 209.587-034, SVP-2, unskilled work, light in exertion, with an estimated 60,000 jobs nationally; Garment Sorter, DOT# 222.687-014, SVP-2, unskilled, light in exertion, with an estimated 24,000 jobs nationally; and Classifier, DOT# 361.687-014, SVP-2, unskilled work, light in exertion, with an estimated 55,000 jobs nationally. (*Id*).

Finally, the ALJ asked VE Wright if such an individual as in the first hypothetical could find employment with the additional limitation of being off task for 20 percent of the workday. (Tr. 63). VE Wright testified that employers will not tolerate greater than ten percent of the workday off task, so this limitation would be work-preclusive. (*Id.*).

## IV.    The ALJ's Decision

In her decision dated October 23, 2024, the ALJ made the following findings:

1.    The claimant meets the insured status requirements of the Social Security Act through September 30, 2028. (8D).

2.    The claimant has not engaged in substantial gainful activity since May 2, 2023, the alleged onset date (20 CFR 404.1571 et seq., and 416.971 et seq.).

3.    The claimant has the following severe impairments: Bipolar Disorder, Depression, Anxiety, Post-Traumatic Stress Disorder ("PTSD"), Degenerative Disc Disease of the Lumbar Spine, and Shoulder Sprain. (20 CFR 404.1520(c) and 416.920(c)).

4.    The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925 and 416.926).

5.    After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b) except the claimant can frequently climb ladders, ropes, and scaffolds. The claimant can frequently crawl. The claimant can perform simple, routine, and repetitive tasks, but not at a production rate pace (e.g., assembly line work). The claimant can

11

occasionally interact with coworkers, supervisors, and the public. The claimant can tolerate occasional changes in a routine work setting.

6.  The claimant is capable of performing past relevant work as a Cleaner, Housekeeping. This work does not require the performance of work-related activities precluded by the claimant's residual functional capacity (20 CFR 404.1565 and 416.965).

7.  The claimant has not been under a disability, as defined in the Social Security Act, from May 2, 2023, through the date of this decision (20 CFR 404.1520(f) and 416.920(f)).

(Tr. 21-32).

## V.    Law & Analysis

### A.    Standard for Disability

Social Security regulations outline a five-step process the ALJ must use to determine whether a claimant is entitled to benefits:

1.  whether the claimant is engaged in substantial gainful activity;

2.  if not, whether the claimant has a severe impairment or combination of impairments;

3.  if so, whether that impairment, or combination of impairments, meets or equals any of the listings in 20 C.F.R. Part 404, Subpart P, Appendix 1;

4.  if not, whether the claimant can perform their past relevant work in light of his RFC; and

5.  if not, whether, based on the claimant's age, education, and work experience, they can perform other work found in the national economy.

20 C.F.R. § 404.1520(a)(4)(i)-(v); *Combs v. Comm'r of Soc. Sec.*, 459 F.3d 640, 642-43 (6th Cir. 2006). The Commissioner is obligated to produce evidence at Step Five, but the claimant bears the ultimate burden to produce sufficient evidence to prove they are disabled and, thus, entitled to benefits. 20 C.F.R. § 404.1512(a).

12

### B. Standard of Review

This Court reviews the Commissioner's final decision to determine if it is supported by substantial evidence and whether proper legal standards were applied. 42 U.S.C. § 405(g); *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007). However, the substantial evidence standard is not a high threshold for sufficiency. *Biestek v. Berryhill*, 587 U.S. 97, 103 (2019). "It means – and means only – 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Id.* quoting *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938). Even if a preponderance of the evidence supports the claimant's position, the Commissioner's decision cannot be overturned "so long as substantial evidence also supports the conclusion reached by the ALJ." *Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 477 (6th Cir. 2003).

Under this standard, the court cannot decide the facts anew, evaluate credibility, or re-weigh the evidence. *Id.* at 476. And "it is not necessary that this court agree with the Commissioner's finding," so long as it meets the substantial evidence standard. *Rogers*, 486 F.3d at 241. This is so because the Commissioner enjoys a "zone of choice" within which to decide cases without court interference. *Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986).

Even if substantial evidence supported the ALJ's decision, the court will not uphold that decision when the Commissioner failed to apply proper legal standards, unless the legal error was harmless. *Bowen v. Comm'r of Soc. Sec.*, 478 F.3d 742, 746 (6th Cir. 2006) ("[A] decision . . . will not be upheld [when] the SSA fails to follow its own regulations and that error prejudices a claimant on the merits or deprives the claimant of a substantial right."); *Rabbers v. Comm'r Soc. Sec. Admin.*, 582 F.3d 647, 654 (6th Cir. 2009) ("Generally, . . . we review decisions of administrative agencies for harmless error."). Furthermore, this Court will not

13

uphold a decision when the Commissioner's reasoning does "not build an accurate and logical bridge between the evidence and the result." *Fleischer v. Astrue*, 774 F. Supp. 2d 875, 877 (N.D. Ohio 2011). Requiring an accurate and logical bridge ensures that a claimant and the reviewing court will understand the ALJ's reasoning, because "[i]f relevant evidence is not mentioned, the court cannot determine if it was discounted or merely overlooked." *Shrader v. Astrue*, No. 11-13000, 2012 WL 5383120, at *6 (E.D. Mich. Nov. 1, 2012); *see also Bowen v. Comm'r of Soc. Sec.,* 478 F.3d 742, 749 (6th Cir. 2007).

## VI.     Discussion

Luzader brings a single issue for this Court's review: Whether the ALJ improperly rejected Drs. Fernandez's, Swain's, and Scheatzle's more limiting opinions. (ECF Doc 7, p. 1).

### A.     The ALJ properly evaluated Drs. Fernandez, Swain, and Scheatzle's medical opinions.

Luzader asserts that remand is proper because the ALJ did not properly consider the more limiting opinions of state agency psychological physicians Drs. Fernandez and Swain, and consultative examiner Dr. Scheatzel. (ECF Doc. 7, p. 8). The medical opinions will be taken in turn, starting with the prior administrative medical findings of Drs. Fernandez and Swain, followed by the consultative examination of Dr. Scheatzel.

#### 1.     Drs. Fernandez and Swain

Luzader contends that the ALJ failed to properly evaluate the medical opinions of state agency psychological physicians Drs. Fernandez and Swain. (ECF Doc 7, p. 10). Specifically, Luzader argues that the ALJ erred because finding the state agency psychological physicians' opinions, limiting Luzader to brief and superficial interaction, unpersuasive, for the sole reason that the terms "brief" and "superficial" are not defined by the Statute or the regulations, was not sufficient reasoning. (*Id.* at pp. 9-10). Luzader states that persuasive authority has found "brief"

14

and "superficial" to be sufficiently precise based on everyday usage. (*Id.* at pp. 10-11). Therefore, by failing to articulate any reason other than the terms' lack of definition, the ALJ did not engage in the supportability and consistency analysis as required by agency regulations. (*Id.* at p. 10).

The Commissioner responds that the ALJ did properly evaluate the medical opinions of the state agency psychological physicians. (ECF Doc 8, p. 6). The Commissioner argues that agency regulations only require the ALJ to conduct a supportability and consistency analysis on a source level, which the ALJ did. (*Id.*). Additionally, the ALJ did consider the supportability of the specific opined limitation by considering the lack of explanation of the term "superficial" by the state agency psychological physicians. (*Id.*). However, the Commissioner contends, even if error did occur, the ALJ's RFC determination was consistent with the opined limitations. (*Id.* at p. 7). The ALJ included a limitation to only "occasional" interaction with others, which encompasses the "brief" and "superficial" limitations opined by the state agency psychological physicians. (*Id.* at pp. 7-8).

The evaluation of medical opinion evidence is governed by 20 C.F.R. § 404.1520c. This regulation mandates that the ALJ "will not defer or give any evidentiary weight, including controlling weight to any medical opinion(s) . . . ." 20 C.F.R. § 404.1520c(a). Rather, the ALJ must evaluate each medical opinion's persuasiveness based on its: (1) supportability; (2) consistency; (3) relationship with the plaintiff; (4) specialization; and, (5) "other factors that tend to support or contradict a medical opinion or prior administrative medical finding." 20 C.F.R. § 404.1520c(c); *see also Heather B. v. Comm'r of Soc. Sec.,* No. 3:20-cv-442, 2022 WL 3445856 (S.D. Ohio Aug. 17, 2022). Supportability and consistency are the most important factors; ALJs must "explain how [they] considered the supportability and consistency factors for a medical

15

source's medical opinions or prior administrative findings in [their] determination or decision."

20 C.F.R. § 404.1520c(b)(2). ALJs "may, but are not required to," consider factors three through

five when evaluating medical source opinions. *Id*.

An ALJ is not obligated to explain each limitation or restriction adopted or not adopted.

*Pitrman v. Comm'r of Soc. Sec.*, 2023 WL 3510752, at *14 (N.D. Ohio April 10, 2023). Instead,

when evaluating a medical opinion, an ALJ need only evaluate the opinion on a source level. 20

C.F.R. § 404.1520c(c)(1).

For supportability, "[t]he more relevant the objective medical evidence and supporting

explanations presented by a medical source are to support his or her medical opinion(s) . . . the

more persuasive the medical opinions . . . will be." 20 C.F.R. § 404.1520c(c)(1). For consistency,

"[t]he more consistent a medical opinion(s) . . . is with the evidence from other medical sources

and non-medical sources in the claim, the more persuasive the medical opinion(s) . . . ." 20

C.F.R. § 404.1520c(c)(2).

An ALJ must "provide a coherent explanation of his [or her] reasoning." *Lester v. Saul*,

No. 5:20-cv-01364, 20 WL 8093313, at *14 (N.D. Ohio Dec. 11, 2020), *report and*

*recommendation adopted sub nom., Lester v. Comm'r of Soc. Sec.,* No. 5:20-cv-01364, 2021 WL

119287 (N.D Ohio, Jan. 13, 2021). The ALJ's medical source opinion evaluation must contain a

"minimum level of articulation" to "provide sufficient rationale for a reviewing adjudicator or

court." *Revisions to Rules Regarding the Evaluation of Medical Evidence,* 2017 WL 168819, 82

Fed. Reg. 5844, 5858 (Jan. 18, 2017)*., 2017 WL 168819, 82 Fed. Reg. 5844, 5858 (Jan. 18,

2017). If an ALJ does not "meet these minimum levels of articulation," it "frustrates this

[C]ourt's ability to determine whether her disability determination was supported by substantial

16

evidence." *Heather B.*, 2022 WL 3445856, at \*3, *citing Warren I. v. Comm'r of Soc. Sec.,* No. 5:20-cv-495, 2021 WL 860506, at \*8 (N.D.N.Y., Mar. 8, 2021).

Here, the ALJ addressed the supportability and consistency of the state agency psychological physicians' medical opinions at a source level. (Tr. 28). When evaluating the state agency psychological physicians' medical opinion, the ALJ stated:

> The State agency psychological physicians opined that the claimant could understand and remember complex tasks. The claimant could maintain concentration, persistence and pace, to carry out complex tasks in a work setting which does not involve a fast-paced production demand. The claimant could interact with coworkers, supervisors, and the public on a brief, superficial basis. The claimant can adapt to a work setting which does not involve a fast-paced production demand with infrequent changes in expectations[.] The undersigned finds the opinion regarding social interaction to be unpersuasive. It is not couched in vocational terms. The terms "brief" and "superficial" are not defined by the Statue or the regulations. Therefore, this opinion is unpersuasive. The undersigned finds the balance of the opinions to be persuasive. *They are supported by and consistent with the record*. The claimant reported that her mental health conditions interfered with her ability to focus. Her ability to pay attention was limited. The claimant testified that she experienced periods of low motivation. These symptoms support limiting the claimant's work pace. The claimant stated that her mental health conditions caused her to be depressed and tearful. She alleged that she experienced anhedonia and limited motivation which caused her to neglect grooming and hygiene. She indicated that she tolerated stress and changes in routine poorly. These symptoms support limiting the frequency of the claimant's workplace changes.

(Tr. 28) (emphasis added).

The ALJ properly evaluated the state agency reviewing psychologists' opinions. In finding the balance of the state agency psychological physician's medical opinions persuasive, the ALJ directly states, "They are supported by and consistent with the record." (Tr. 28). The ALJ then follows with the reasons the opinion is supported and consistent. The ALJ found that Luzader's reported symptoms and conditions supported the state agency reviewing psychologists' limitations and were consistent with the record. (Tr. 28). By doing so, the ALJ followed agency regulations through addressing the medical opinion in the lens of supportability

17

and consistency on a source level. The ALJ must also "provide a coherent explanation of his [or her] reasoning" in finding some parts of the opinion persuasive and others unpersuasive. *Lester*, 20 WL 8093313, at \*14. By stating that "brief" and "superficial" are not vocational terms, the ALJ provided a coherent explanation for finding the opinion unpersuasive.

Luzader does not dispute this in her brief on the merits. (*See* ECF Doc. 7). Instead, Luzader disputes that the ALJ did not engage in a supportability and consistency analysis on the specific "brief" and "superficial" limitation. (*See* ECF Doc. 7, p. 10). This, the ALJ is not required to do. *See Pitrman*, 2023 WL 3510752, at \*14; 20 C.F.R. § 404.1520c(c)(1). Thus, the ALJ properly conducted a supportability and consistency analysis of the state agency reviewing psychologists' medical opinions, explained their reasoning, and cited to substantial evidence.

Therefore, I determine the ALJ did not err in evaluating the state agency psychological physicians' medical opinions and has met the minimum level of articulation to allow this Court's review.

### 2.     Dr. Scheatzle

Luzader asserts that the ALJ failed to properly evaluate Dr. Scheatzle's medical opinion. (ECF Doc 7, pp. 11-12). She argues that the ALJ improperly found Dr. Scheatzle's mental and physical opinion to be unpersuasive for the reason that the medical opinion was based on Luzader's self-reports. (*Id.* at p. 11). The ALJ did so in error, Luzader continues, because the ALJ offered no evidence to support this conclusion. (*Id.* at p. 11). Additionally, the ALJ improperly evaluated Dr. Scheatzle's physical examination as inconsistent with Dr. Scheatzle's opined physical limitations because there were abnormal findings that the examination documented. (*Id.* at pp. 11-12). Specifically, on examination, Luzader had guarding and tenderness of the bilateral lower lumbar paraspinal muscles and tenderness in the left posterior

subscapular region of the shoulder, she had some slight decreased ROM in the left shoulder, and she had mild left shoulder impingement and a positive Kennedy-Hawkins test. (*Id.* at 12). As the ALJ failed to consider this more limiting opinion, Luzader contends, the case should be remanded for further proceedings. (*Id.*).

The Commissioner contends that the ALJ properly evaluated Dr. Scheatzle's medical opinion when finding it unpersuasive. (ECF Doc 8, pp. 8-10). The Commissioner argues that the ALJ properly engaged in supportability analysis when he evaluated Dr. Scheatzle's opined mental limitations because Dr. Scheatzle performed no mental status evaluation, and he based his opinion on only Luzader's reported history. (*Id.* at p. 8). The Commissioner contests Luzader's assertion that the ALJ rejected the physical limitations because they were based on self-reports. (*Id.* at p. 9). Instead, the "self-report" reasoning only applied to Dr. Scheatzle's opined mental limitations. (*Id.*). The Commissioner asserts that the ALJ properly engaged in a supportability and consistency analysis of Dr. Scheatzle's opined physical conditions by reasoning that the examination findings did not support the opined limitations and that the rest of the record was not consistent with the opined limitations. (*Id.*).

For the following reasons, the ALJ properly evaluated Dr. Scheatzle's medical opinion under agency regulations. I will first look to the ALJ's evaluation of Dr. Scheatzle's opined mental limitations and then turn to the evaluation of his opined physical limitations.

### a.      Dr. Scheatzle's opined mental limitations

In his consultative examination, Dr. Scheatzle opined that , "[Luzader's] [s]ustained concentration, persistence of social interaction and adaptation [is] impaired *with reported history of bipolar disorder.*" (Tr. 593) (emphasis added). The ALJ rejected this limitation in her decision:

19

The undersigned finds the opinions regarding concentration, persistence, social functioning, and adaptation were unpersuasive. Dr. Scheatzle is not a mental healthcare professional. Furthermore, Dr. Scheatzle based this opinion on the claimant's self reports. Therefore, the opinion is not based on objective medical evidence.

(Tr. 27).

When coming to a medical opinion on a patient's residual functioning capacity, the physician must base their opinion on objective medical evidence. *Kepke v. Comm'r of Soc. Sec.*, 636 F. App'x 625, 638 (6th Cir. 2016). Despite any "inherent subjectivity in the field of psychiatry, a doctor cannot simply repeat what his patient says and re-package it as an opinion." *Id.* at 629.

The ALJ properly evaluated and rejected Dr. Scheatzle's limitation. When coming to his opined mental limitations, Dr. Scheatzle based Luzader's mental limitations solely on her self-reported history of her conditions by stating her concentration, persistence, and adaptation was "impaired with reported history of bipolar disorder." (Tr. 593). Further, Dr. Scheatzle's opinion was obtained as a physical consultative examiner; he was not consulted to opine on Luzader's mental impairments. (*See* Tr. 591-93). Instead, in the entire medical opinion, Dr. Scheatzle only notes what Luzader said about her own mental conditions. (Tr. 591). Since Dr. Scheatzle, as a physical consultative examiner, appears to have "simply repeat[ed] what his patient [said] and re-package[d] it as an opinion," the ALJ properly rejected his opined mental limitations. *Kepke*, 636 F. App'x at 629.

### b.     Dr. Scheatzle's opined physical limitations

Dr. Scheatzle opined that Luzader had the following limitations, "with respect to sitting, this is unlimited with change of position every 30 minutes, standing unlimited with change of position every 10 minutes. Walking one city block and stop for rest. Lifting at medium physical

20

demand level of 50 pounds occasionally up to chest height or up to 20 pounds overhead.

Carrying at 30 pounds. Handling objects, hearing, speaking, travelling, understanding, memory

are within normal limits." (Tr. 592-93). The ALJ found these limitations to be unpersuasive

stating in her decision:

> I find the balance of the opinion to be unpersuasive. It was *not supported* by the examination findings. The claimant was able to walk with a normal gait and retained 5/5 strength in her lower extremities. There was no indication that she would require a sit/stand option as described. The opinion was also *inconsistent* with the record. The claimant's shoulder pain was significant despite treatment which supports greater limitations to the claimant's lifting and carrying.

(Tr. 27-28) (emphasis added).

As discussed more fully above, the ALJ must evaluate the medical evidence through the

lens of supportability and consistency. 20 C.F.R. § 404.1520c(b)(2). The ALJ then must

articulate that evaluation in her decision. *Lester*, 20 WL 8093313, at *14, *report and

recommendation adopted sub nom., Lester,* No. 5:20-cv-01364. 2021 WL 119287.

As a first matter, Luzader is mistaken that the ALJ rejected these physical limitations

because they were based on Luzader's self-reporting. The ALJ clearly states in her decision,

"The undersigned finds the opinions *regarding concentration, persistence, social functioning,*

*and adaptation* were *unpersuasive*…. Dr. Scheatzle based *this* opinion on the claimant's self

reports….I find *the balance of the opinion* to be unpersuasive." (Tr. 27-28) (emphasis added).

The ALJ clearly separates her consideration of the mental and physical limitations opined by Dr.

Scheatzle. First discussing Dr. Scheatzle's opinion regarding "concentration, persistence, social

functioning, and adaptation," the ALJ found "this" opinion to be based on Luzader's self-reports.

The ALJ then discussed the "balance of the opinion" and independently found it to be

unpersuasive. Nowhere in the ALJ's discussion of physical limitations did she raise an issue

concerning Luzader's self-reporting.

However, what does follow, is a proper analysis of the supportability and consistency of Dr. Scheatzle's medical opinion as required under 20 C.F.R. § 404.1520c(a). The ALJ discusses that the examination found that Luzader had a normal gait, did not struggle to get on or off the examination table, and had five out of five strength in her lower extremities. (Tr. 27-28). According to the ALJ, these relatively normal findings did not support the limitations that Dr. Scheatzle opined. Additionally, the ALJ found that Dr. Scheatzle's limitations were inconsistent with the record because the record indicated *greater* limitations than those opined by Dr. Scheatzle. The ALJ then cited to those inconsistent medical records which showed significant pain despite treatment. (Tr. 28). By engaging in this analysis, and supporting her finding with substantial evidence, the ALJ properly evaluated Dr. Scheatzle's medical opinion.

Luzader next argues that the ALJ failed to consider Dr. Scheatzle's physical examination because he made certain abnormal findings. (ECF Doc 7, p. 12). However, the ALJ did take note of these abnormal findings when making the RFC determination. (Tr. 26). Therefore, since the ALJ properly engaged a supportability and consistency analysis of the Dr. Scheatzle's opinion, Luzader is merely citing to competing evidence and asking this Court to reweigh the evidence in her favor. This the Court cannot do. *Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 476 (6th Cir. 2003) ("[We] are limited to evaluating whether or not the ALJ's explanations for partially discrediting Ms. Jones are reasonable and supported by substantial evidence in the record.").

Based on the foregoing reasons, I determine that the ALJ properly evaluated the medical opinions of Drs. Fernandez, Swain, and Scheatzle and supported her findings with substantial evidence. I recommend the District Court affirm.

22

**VII.     Recommendation**

Because the ALJ applied proper legal standards and reached a decision supported by substantial evidence, I recommend that the Commissioner's final decision denying Luzader's applications for DIB and SSI be affirmed.

Dated: August 3, 2026

Reuben J. Sheperd
United States Magistrate Judge

---

**OBJECTIONS**

**<u>Objections, Review, and Appeal</u>**

Within 14 days after being served with a copy of this report and recommendation, a party may serve and file specific written objections to the proposed findings and recommendations of the magistrate judge. Rule 72(b)(2), Federal Rules of Civil Procedure; *see also* 28 U.S.C.§ 636(b)(1); Local Rule 72.3(b). Properly asserted objections shall be reviewed de novo by the assigned district judge.

* * *

Failure to file objections within the specified time may result in the forfeiture or waiver of the right to raise the issue on appeal either to the district judge or in a subsequent appeal to the United States Court of Appeals, depending on how or whether the party responds to the report and recommendation. *Berkshire v. Dahl*, 928 F.3d 520, 530 (6th Cir. 2019). Objections must be specific and not merely indicate a general objection to the entirety of the report and recommendation; "a general objection has the same effect as would a failure to object." *Howard v. Sec'y of Health and Hum. Servs.*, 932 F.2d 505, 509 (6th Cir. 1991). Objections should focus on specific concerns and not merely restate the arguments in briefs submitted to the magistrate judge. "A reexamination of the exact same argument that was presented to the Magistrate Judge without specific objections 'wastes judicial resources rather than saving them, and runs contrary to the purpose of the Magistrates Act.'" *Overholt v. Green*, No. 1:17-CV-00186, 2018 WL 3018175, *2 (W.D. Ky. June 15, 2018) quoting *Howard*. The failure to assert specific objections may in rare cases be excused in the interest of justice. *See United States v. Wandahsega*, 924 F.3d 868, 878-79 (6th Cir. 2019).